IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROKU, INC., | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
|     v. | ) C.A. No. 21-1035 (MN) |
| | ) |
| ALMONDNET, INC. and | ) |
| INTENT IQ, LLC, | ) |
| | ) |
|         Defendants. | ) |

**ROKU'S REPLY BRIEF IN SUPPORT OF ITS FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS DEFENDANTS' INFRINGEMENT COUNTERCLAIMS ON U.S. PATENT NOS. 8,677,398, 10,715,878, 8,566,164, 8,595,069, AND 10,321,198[1] AS BEING DIRECTED TO PATENT-INELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101**

OF COUNSEL:

Wasif H. Qureshi
Leisa Talbert Peschel
JACKSON WALKER LLP
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4200

Blake T. Dietrich
JACKSON WALKER LLP
2323 Ross Ave., Suite 600
Dallas, TX 75201
(214) 953-6000

November 5, 2021

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mflynn@morrisnichols.com

*Attorneys for Plaintiff Roku, Inc.*

---

[1] Collectively, the "Targeted Advertising Patents."

## TABLE OF CONTENTS

I. Introduction ................................................................................................................. 1

II. There Are No Procedural Impediments To Deciding Ineligibility Regarding the Targeted Advertising Patents ....................................................................................... 1

    A. Under The First-to-File Rule, This Court Should Decide The Merits Of This Case ................................................................................................. 1

    B. Roku Did Not Waive Its Right To Seek Dismissal For Lack of Patent-Eligible Subject Matter By Filing An Answer ........................................... 1

    C. AlmondNet Did Not Identify Any Specific Claim Construction Dispute .. 2

III. *Alice* Step One: Each Claim At Issue Is Abstract ...................................................... 3

    A. The Claims At Issue Of The LAN Patents Are Abstract ............................ 3

        1. Roku did not ignore meaningful limitations .................................. 3

        2. The LAN Patents' claims do not address the purported problems . 4

        3. AlmondNet relies on cases with distinguishable facts .................... 5

    B. The Claims At Issue Of The Set-Top Box Patents Are Abstract ................ 6

        1. Roku did not ignore meaningful limitations .................................. 6

        2. AlmondNet's cited cases are distinguishable ................................ 7

    C. The Claims At Issue Are Not Patent-Eligible Technological Improvements ............................................................................................................................. 9

IV. *Alice* Step Two: No Inventive Concept .................................................................... 9

V. Conclusion ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alice Corp. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) .................................................................................................... *passim*

*CosmoKey Solutions GMBH v. Duo Security LLC*,
   No. 2020-2043, 2021 WL 4515279 (Fed. Cir. Oct. 4, 2021) ............................................. 7, 8

*DDR Holdings, LLC v. Hotels.com, LP*,
   773 F.3d 1245 (Fed. Cir. 2014) ......................................................................................... 5, 7

*Free Stream Media Corp. v. Alphonso Inc.*,
   996 F.3d 1355 (Fed. Cir. 2021) ..................................................................................... 3, 8, 10

*Improved Search LLC v. AOL Inc.*,
   170 F. Supp. 3d 683 (D. Del. 2016) ................................................................................... 5, 6

*MyMail, Ltd. v. ooVoo, LLC*,
   934 F.3d 1373 (Fed. Cir. 2019) ............................................................................................. 2

*Packet Intelligence LLC v. NetScout Sys.*,
   965 F.3d 1299 (Fed. Cir. 2020) ............................................................................................. 8

*PersonalWeb Technologies LLC v. Google LLC*,
   Nos. 2020-1543, 2020-1553, 2020-1554, 2021 WL 3556889 (Fed. Cir. Aug.
   12, 2021) ................................................................................................................................ 7

*Pucs, Inc. v. Hulu, Inc.*,
   Case No. 2:21-cv-02302-RGK-KES, 2021 WL 4780576 (C.D. Cal. Aug. 18,
   2021) ...................................................................................................................................... 9

*Telebrands Corp. v. 1ByOne Prods. Inc.*,
   C. A. No. 17-997-JFB-SRF, 2017 WL 5593785 (D. Del. Nov. 21, 2017) ............................. 2

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ............................................................................................... 5

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
   957 F.3d 1303 (Fed. Cir. 2020) .......................................................................................... 8, 9

**Federal Statutes**

35 U.S.C. § 101 ............................................................................................................................ 1, 4

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................................ 2

**I.      INTRODUCTION**

AlmondNet's Response (D.I. 29) is bereft of meaningful analysis refuting Roku's Motion (D.I. 24, 25) that all the claims at issue in the Targeted Advertising Patents concern the same general concept of targeted advertising.[2] *See* D.I. 25 at 8–12 (summarizing the claims at issue). Nothing contained in AlmondNet's Response warrants a different view of the character of those claims as directed to abstract ideas or provides the necessary inventive concept to demonstrate patent eligibility under 35 U.S.C. § 101.

**II.     THERE ARE NO PROCEDURAL IMPEDIMENTS TO DECIDING INELIGIBILITY REGARDING THE TARGETED ADVERTISING PATENTS**

In its Response, AlmondNet raises three separate procedural arguments to avoid dismissal—none prevent this Court from dismissing the challenged AlmondNet Counterclaims.

**A.      Under The First-to-File Rule, This Court Should Decide The Merits Of This Case**

AlmondNet challenges this Court's ability to decide Roku's Motion based on its request to have this case dismissed or transferred to the Western District of Texas. D.I. 29 at 7. As discussed in Roku's Opposition to AlmondNet's request, neither dismissal nor transfer is warranted because Roku filed this case first and Delaware is a clearly more convenient venue. *See generally* D.I. 19 (Roku Opposition). Nothing prevents this Court from taking up the merits of this case.

**B.      Roku Did Not Waive Its Right To Seek Dismissal For Lack of Patent-Eligible Subject Matter By Filing An Answer**

AlmondNet next argues that Roku waived its right to seek dismissal because Roku filed an

---

[2] AlmondNet's protest that Roku is seeking to invalidate all 170 claims in the patents is misguided. Roku's Motion is clear in addressing only those claims that were previously alleged by AlmondNet to infringe—namely, claims 13–17 and 19–26 of the '398 Patent, claims 1–23 of the '878 Patent, claims 1–3 and 6–14 of the '164 Patent, claims 1, 3–5, and 8–17 of the '069 Patent, and claims 1, 3–5, and 8–17 of the '198 Patent. *See* Motion at n. 4, 6, 8, 9. Of those claims at issue, there are only 7 independent claims—claim 13 of the '398 Patent, claims 1, 13, and 22 of the '878 Patent, claim 1 of the '164 Patent, claim 1 of the '069 Patent, and claim 1 of the '198 Patent. And as evident from the analysis in Roku's Motion, this is considerable redundancy across the claims.

answer; however, AlmondNet misconstrues the law on which it relies. *See* D.I. 29 at 8. Roku filed its Answer to AlmondNet's counterclaims (D.I. 26) **_after_** Roku filed its Rule 12(b)(6) Motion to Dismiss (D.I. 24, D.I. 25). Roku thus complied with Rule 12(b) by filing the motion before Roku's responsive pleading. In the *Telebrands* case on which AlmondNet relies to argue waiver, the basis for the defendant's motion was that "substantive details [were] lacking to show how the Accused Product allegedly infringed the recited claims of the patents-in-suit." *Telebrands Corp. v. 1ByOne Prods. Inc.*, C. A. No. 17-997-JFB-SRF, 2017 WL 5593785, *1–*2 (D. Del. Nov. 21, 2017). The court in *Telebrands* held that the "very act of answering the complaint defeats the argument that the complaint is too thin to provide adequate notice of the claims and permit the defendant to respond in a meaningful way." *Id.* at *2. Here, Roku's motion is not based on lack of adequate notice regarding AlmondNet's infringement allegations, and so *Telebrands* is not applicable— there is no inconsistency between Roku's Motion and post-motion Answer.[3]

### C.     AlmondNet Did Not Identify Any Specific Claim Construction Dispute

AlmondNet also generically argues *MyMail* supports its argument that the Court "deserves a full claim construction record when deciding those issues." D.I. 29 at 25. But AlmondNet failed in its Response to raise any claim construction dispute that impacts the *Alice* analysis. In *MyMail*, the Federal Circuit found error where the district court did not address the parties' claim construction dispute that was specifically presented in the briefing on a motion for judgment on the pleadings. *See MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1376 (Fed. Cir. 2019) (parties disputed the proper construction of "toolbar"). Here, AlmondNet did not present any specific term for construction. There is therefore no live dispute for the Court to consider before ruling.

---

[3] It is commonplace for a party to file an answer after a Rule 12(b)(6) motion, even if around the same time (*e.g.*, the same day). *See generally* Fed. R. Civ. P. 12 (no prohibition on answer filed before the Court rules on a motion asserting a Rule 12(b) defense).

2

## III. *ALICE* STEP ONE: EACH CLAIM AT ISSUE IS ABSTRACT

### A. The Claims At Issue Of The LAN Patents Are Abstract

#### 1. Roku did not ignore meaningful limitations

AlmondNet's focus on specific limitations misconstrues the purpose of the *Alice* step one inquiry, which is to determine the character of each claim as a whole. *See* D.I. 29 at 5 (AlmondNet's argument); *see also Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1361 (Fed. Cir. 2021) (look to "the character of the claim as a whole"). For the LAN Patents, Roku identified the abstract idea for the LAN Patents as "causing an action based on an association between identifiers for two devices and information related to a first device." D.I. 25 at 15. That accurately characterizes the character of the claims as a whole. The limitations underlined by AlmondNet on page 10 of the Response indicate that the claims take place in a computer environment, which is not disputed. However, just because claims use an abstract idea in a computer environment does not mean they are patent-eligible. *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 223 (2014) ("limiting use of an abstract idea to a particular technological environment" is not sufficient for patent eligibility (citations omitted)).

AlmondNet attempts to argue that claim 13 of the '398 Patent concerns an automatic action concrete enough to take it out of the realm of an abstract idea. *See* D.I. 29 at 12 (AlmondNet argument). But Claim 13 does not specify how to make the claimed association (requiring only that the association be "based on" connection to the same LAN) for that unspecified action and does not recite an improvement in computer functionality. *See Free Stream*, 996 F.3d at 1363–65 (Fed. Cir. 2021) (finding claims abstract where how the result is achieved was not specified in the claims and the claims did not recite an improvement in computer technology). Rather, as claimed, the computer environment is merely a tool to accomplish the idea. *See id.* at 1365 ("the alleged technological improvement does nothing more than implement a computer to achieve the abstract

3

idea of providing targeted advertising to the mobile device user").

AlmondNet also attempts to argue that claim 21 of the '878 Patent is materially different from claim 13 of the '398 Patent with respect to *Alice* step one. *See* D.I. 29 at 16–17 (AlmondNet's argument). The limitations underlined by AlmondNet on pages 16 and 17 of the Response do not change the basic character of the claims. Rather, they specify an identifier (preexisting dynamically assigned IP address), an undefined time limit on determining whether the two devices connected to the same LAN, certain devices (Internet-accessing electronic devices where one is a mobile phone), and that the programmed automatic action is to select and deliver an advertisement to a second device based on user profile information. Those limitations do not impact the conclusion that claim 21 of the '878 Patent is directed to an abstract idea.

### 2. The LAN Patents' claims do not address the purported problems

AlmondNet's portrayal of the claims of the LAN Patents as patent-eligible solutions to a technological problem misses the mark because the benefit touted by AlmondNet as preventing § 101 ineligibility is not recited in the challenged claims. *See* D.I. 29 at 9–15 (AlmondNet argument). In particular, the specification of the LAN Patents suggests that the shortcoming of other cross-media ad targeting systems is using personally identifiable information ("PII") to target advertisements. '398 Patent at 7:24–62; *see also* D.I. 29 at 10–11 (AlmondNet characterizing the problem as avoiding use of PII). But that problem is not solved by the claims of the LAN Patents, which do not exclude the use of PII. *See, e.g.*, '398 Patent, claim 13 (not excluding use of PII); '878 Patent, claim 1 (not excluding but rather suggesting use of PII: "utilize user profile information . . . comprising behavioral or demographic data . . . to take an automatic action") and claim 21 (system is programmed to perform even when device identifiers do not contain PII but not required to do so without PII). Therefore, the claimed "advance" is untethered to the claims at issue. Further, any distinction between targeted advertising with or without PII does not change

4

the character of the claims to be less abstract.

### 3. AlmondNet relies on cases with distinguishable facts

AlmondNet points to cases holding that technical solutions to technical problems are patent-eligible as a matter of law. *See* D.I. 29 at 14–15 (AlmondNet relying on *DDR Holdings* and *Improved Search*). Each of those cases contains significantly different facts than those in this case.

Specifically, in *DDR Holdings*, the patent claims recited a specific solution of an "outsource provider" that had a web server that directed visitors to a hybrid web page to combine the look and feel elements from the host website and product information from a third party website related to an advertisement clicked on at the host website in order to avoid having to transport the visitor to the third party website and away from the host website. *DDR Holdings, LLC v. Hotels.com, LP*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). In other words, the claims recited a very detailed solution to the problem of website redirection where the result was a hybrid webpage.

In contrast to the facts of *DDR Holdings*, the Federal Circuit noted that "[i]n some instances, patent-ineligible abstract ideas are plainly identifiable and divisible from the generic computer limitations recited by the remainder of the claim" and cited *Ultramercial* as an example of a targeted advertising case where use of the Internet could not render the claims patent-eligible. *DDR Holdings*, 773 F.3d at 1256, 1258 (citing *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014)). That is the situation here. The claims at issue of the LAN Patents recite generic computer limitations to implement the abstract idea of causing an action based on an association between identifiers for two devices and information related to a first device. *See* D.I. 25 at 14–15 (discussing the abstract nature of the claims at issue of the LAN Patents).

*Improved Search* is also distinguishable from the facts of this case. *See* D.I. 29 at 15 (AlmondNet relying on *Improved Search LLC v. AOL Inc.*, 170 F. Supp. 3d 683 (D. Del. 2016)). In *Improved Search*, the methods of one patent "address[ed] the problem of ensuring that Internet

5

search engines retrieve not only Web pages and documents written in the query language (source), but in foreign (target) languages as well" and the methods of the other patent "perform[ed] translingual searches and use them to display cross-language advertising to the user of the search engine." *Improved Search*, 170 F. Supp. 3d at 694. The claimed solutions were therefore rooted in computer technology, very specific (e.g., for example requiring the step of "performing dialectal standardization of the content word extracted from the query" and performing searches in a second language among other steps), and thus not abstract. *See id.* at 692–693 (claim 1 of the '101 patent and claim 1 of the '154 patent). In contrast, claim 13 of the '398 Patent requires causing "an action" with respect to a second device based on an association between first and second device identifiers based on connection of the devices to the same LAN. That is merely using information to cause an action, which has repeatedly been found by the Federal Circuit to be abstract. *See* D.I. 25 at 6 (collecting cases).

    **B.**    **The Claims At Issue Of The Set-Top Box Patents Are Abstract**

              **1.**    **Roku did not ignore meaningful limitations**

AlmondNet did not provide its own characterization of the nature of the claims at issue of the Set-Top Box Patents. Rather, AlmondNet criticizes Roku's identification of the abstract idea—"targeting an advertisement to one device based on user profile information (here, an association between a set-top box identifier and an online access identifier)"—by underlining additional limitations in the independent claims. *See* D.I. 25 at 21 (identifying the abstract idea); *see also* D.I. 29 at 18–19 (AlmondNet's argument). As was true above with respect to the claims at issue of the LAN Patents (*see* Section III.A.1), the underlined limitations do not change the basic character of the claims. They specify that the action (including "causing an online advertisement to be selected") occurs automatically, without the use of PII, and/or occur based on recognizing the two devices (user interface and set-top box) are connected to a common LAN. *See* D.I. 29 at 18–19.

6

Mere automation does not change the character of the claims. *Alice*, 573 U.S. at 223. Nor does the requirement to use one type of information (non-PII) over another (PII) render the claims less abstract. And, recognizing two devices are connected to a common LAN is just collecting information about preexisting network structures. These claims are therefore analogous to those found to be abstract as directed to the collection, analysis, and distribution of data and information.

  **2. AlmondNet's cited cases are distinguishable**

Each of the cases AlmondNet relies on for its arguments regarding the Set-Top Box Patents concerns patent claims far different from those at issue here. *See* D.I. 29 at 19–21 (AlmondNet's arguments). As noted above, the claims in *DDR Holdings* recited a detailed solution to the problem of website redirection. *See* Section III.A.3. In contrast, representative claim 1 of the '164 Patent is directed to the abstract idea of targeting an advertisement to one device based on user profile information (an association between a set-top box identifier and an online access identifier). That is more analogous to the patent-ineligible claims in *PersonalWeb* (directed to use of identifiers to control access to data or deliver copies of data items) than the claims in *DDR Holdings*. *See PersonalWeb Technologies LLC v. Google LLC*, Nos. 2020-1543, 2020-1553, 2020-1554, 2021 WL 3556889, *4–*5 (Fed. Cir. Aug. 12, 2021) (finding analogous claims abstract).

AlmondNet also relies on *CosmoKey*, which concerned a patent relating to an authentication method for a computer user performing an online transaction. D.I. 29 at 20 (citing *CosmoKey Solutions GMBH v. Duo Security LLC*, No. 2020-2043, 2021 WL 4515279 (Fed. Cir. Oct. 4, 2021)). In *CosmoKey*, the Federal Circuit did not address the district court's characterization of the claims as abstract under *Alice* step one but found patent eligibility based on its analysis of *Alice* step two that the claims related to "a particular computer-implemented authentication technique" for which at least four claim steps had not been shown to be conventional. *CosmoKey*, 2021 WL 4515279, at *1, *5. In its analysis, the Federal Circuit

7

specifically held that "the claim limitations are more specific and recite an improved method for overcoming hacking by ensuring that the authentication function is normally inactive, activating only for a transaction, communicating the activation within a certain time window, and thereafter ensuring that the authentication function is automatically deactivated." *Id*. at *6. Thus, in *CosmoKey*, the claim limitations demonstrated a specific improvement in computer security that was patent-eligible. In contrast, the claims of the Set-Top Box Patents do not improve computer security—rather, they use information for targeted advertising, and there is not an inventive concept contained in either the limitations or any alleged ordered combination of those limitations. *See* D.I. 25 at 21–24 (discussing the specific limitations of the Set-Top Box Patent claims).

Further, *Packet Intelligence* is distinguishable. *See* D.I. 29 at 20 (AlmondNet relying on *Packet Intelligence LLC v. NetScout Sys.*, 965 F.3d 1299 (Fed. Cir. 2020)). In finding the claims patent-eligible, the Federal Circuit held:

> The asserted patents' specifications make clear that the claimed invention presented a technological solution to a technological problem. The specifications explain that known network monitors were unable to identify disjointed connection flows to each other, and the focus of the claims is a specific improvement in computer technology: a more granular, nuanced, and useful classification of network traffic.

*Packet Intelligence*, 965 F.3d at 1309–10. In contrast to the *Packet Intelligence* claims, which recited specific new configurations to improve computer technology, the Set-Top Box claims are not a patent-eligible technological improvement. *See id.* at 1304 (setting forth claim 19). Rather, the claims manipulate already-existing information to target advertisements, which has repeatedly been found to be an abstract idea ineligible for patenting. *See, e.g., Free Stream*, 996 F.3d at 1358, 1366 (ruling as ineligible claims for providing a mobile phone user with targeted advertisements deemed relevant to the user based on data gathered from the user's television).

Finally, AlmondNet's reliance on *Uniloc* is misplaced. *See* D.I. 29 at 20–21 (AlmondNet's argument). The representative claim in *Uniloc* specifically concerned a primary station for use in

8

a communications system that used an unconventional method of communicating between stations that simultaneously allowed inquiry messages and polling. *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020). The Federal Circuit found that the reduction in latency experienced by parked secondary stations in communications systems of the claims at issue represented a patent-eligible improvement to computer functionality. *Id*. at 1307. Unlike the claims in *Uniloc*, the claims at issue do not specify such concrete improvements in computer technology.

AlmondNet also relies on the *Pucs* case. D.I. 29 at 19. There the district court characterized the claim as describing "a system specifically used for media playback via a particular delivery system, 'OTT.' This mechanism activates when users pause streaming services on any device." *Pucs, Inc. v. Hulu, Inc.*, Case No. 2:21-cv-02302-RGK-KES, 2021 WL 4780576, *4 (C.D. Cal. Aug. 18, 2021). Not only is *Pucs* not controlling case law in this District, but the court's analysis is sparse, and it is unclear as to the full extent of the specification's description of claimed solution and/or whether the same kinds of admissions regarding the existence of limitations in the prior art were made as exist for the Targeted Advertising Patents.

### C. The Claims At Issue Are Not Patent-Eligible Technological Improvements

While AlmondNet attempts to argue that the claims at issue solve technical problems unique to LAN networks or set-top boxes (*see* D.I. 29 at 21–22), the claims instead concern using existing information to take actions known in the art, which is abstract as discussed in Roku's Motion and this Reply. *See, e.g.*, '398 Patent at 6:51–7:62 (cross-media targeting methods known); '164 Patent at 8:16–45 (targeted advertising methods known).

### IV. *ALICE* STEP TWO: NO INVENTIVE CONCEPT

The claims at issue are abstract and should never have issued. AlmondNet points to the fact that the '198 Patent issued after *Alice* and an examiner statement in support of eligibility. D.I. 29 at 22–23. However, mere examination after *Alice* does not immunize claims from eligibility

9

challenges as evidenced by the plethora of cases finding claims that issued after *Alice* to be patent-ineligible. *See, e.g.*, *Free Stream*, 996 F.3d at 1361–62 (post-*Alice* claims directed to "(1) gathering information about television users' viewing habits; (2) matching the information with other content (i.e., targeted advertisements) based on relevancy to the television viewer; and sending that content to a second device" were abstract).

AlmondNet also points to certain post-issuance challenges as support for the eligibility of the claims. *See* D.I. 29 at 23–24 (AlmondNet's argument). However, the fact that a single reference or combination of references does not disclose certain limitations together does not mean that the claims are not abstract. The highlighted portions on page 23 of AlmondNet's Response concern the idea itself and any alleged "tangible" limitations refer merely to generic computer components and identifiers that existed in the prior art and are insufficient to demonstrate the required inventive concept. D.I. 29 at 23; *see also* D.I. 25 at 14–16 (discussing claim 13 of the '398 Patent).

AlmondNet concedes that the vast majority of the claims at issue do not contain an ordered combination of elements but points to certain dependent claims as having an ordered combination. D.I. 29 at 24. Of those claims, only claim 21 of the '878 Patent and claim 19 of the '398 Patent are at issue. Claim 21 is discussed above (*see* Section III.A.1). Claim 19 of the '398 Patent merely specifies that the association use IP addresses associated with the devices based on the time and date of user activity—concepts known and conventional at the time. *See, e.g.*, '398 Patent at 4:1–41 (discussing in the Background Dynamic Host Configuration Protocol, which automatically assigns IP addresses to devices connected to a network that may vary over time).

V. **CONCLUSION**

For the reasons set forth in Roku's Motion and herein, Roku requests that the Court find that the claims of the Targeted Advertising Patents recite abstract ideas with no inventive concept and dismiss Counts III, IV, V, VI, and IX of AlmondNet's Counterclaims.

10

OF COUNSEL:

Wasif H. Qureshi
Leisa Talbert Peschel
JACKSON WALKER LLP
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4200

Blake T. Dietrich
JACKSON WALKER LLP
2323 Ross Ave., Suite 600
Dallas, TX 75201
(214) 953-6000

November 5, 2021

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mflynn@morrisnichols.com

*Attorneys for Plaintiff Roku, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 5, 2021, upon the following in the manner indicated:

| | |
|---|---|
| Brian E. Farnan<br>Michael J. Farnan<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE 19801<br><br>*Attorneys for Defendants* | *VIA ELECTRONIC MAIL* |
| Reza Mirzaie<br>Marc A. Fenster<br>Paul A. Kroeger<br>C. Jay Chung<br>RUSS AUGUST & KABAT<br>12424 Wilshire Boulevard, 12th Floor<br>Los Angeles, CA 90025<br><br>*Attorneys for Defendants* | *VIA ELECTRONIC MAIL* |

/s/ *Michael J. Flynn*
_____
Michael J. Flynn (#5333)