IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ROKU, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1035-MN |
| | ) | |
| ALMONDNET, INC. and | ) | |
| INTENT IQ, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Wasif H. Qureshi, Leisa Talbert Peschel, JACKSON WALKER LLP, Houston, TX; Blake T. Dietrich, JACKSON WALKER LLP, Dallas, TX – Attorneys for Plaintiff.

Brian E. Farnan. Michael J. Farnan, FARNAN LLP, Wilmington, DE; Reza Mirzaie, Marc A. Fenster, Paul A. Kroeger, C. Jay Chung, RUSS AUGUST & KABAT, Los Angeles, CA – Attorneys for Defendants.

November 15, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court is the motion (D.I. 13) of Defendants AlmondNet, Inc. and Intent IQ, LLC (collectively, "Defendants") to dismiss this case or to transfer it to the Western District of Texas pursuant to 28 U.S.C. § 1404(a).  For the reasons set forth below, the Court DENIES Defendants' motion.

I.  **BACKGROUND**

Plaintiff Roku, Inc. ("Plaintiff") is a corporation organized and existing under the laws of Delaware, with its principal place of business in California. (D.I. 1).  Defendants AlmondNet, Inc. and Intent IQ, LLC are a corporation and limited liability corporation, respectively, organized and existing under the laws of Delaware, with their principal place of business in New York. (*Id.*).  At 4:45 p.m. on July 15, 2021, Plaintiff brought this declaratory judgment action against Defendants, asking the Court to find that Plaintiff does not infringe any valid and enforceable claim of nine United States Patents[1] (collectively, "the Patents-in-Suit"). (D.I. 1).  For about 14 months prior to that date, beginning May 2020, the parties had attempted to negotiate a licensing agreement related to the Patents-in-Suit. (D.I. 16 ¶¶ 4–5).  On July 15, 2021, *i.e.,* the day this action was filed, Gil Fuchsberg, a Roku executive, told Roy Shkedi, the CEO of AlmondNet and Chairman of Intent IQ, that Roku did not intend to renew the Non-Disclosure Agreement which had enabled the parties to freely negotiate. (*Id.* ¶ 6).  Shkedi then told Fuchsberg that he "would have no choice but to protect [Defendants'] property rights and pursue a lawsuit against Roku in Texas, and informed him that he will notice the filed lawsuit that very same day." (*Id.*).

The parties filed lawsuits against each other.  At 4:45 p.m. on July 15, 2021, Roku filed the present action against AlmondNet and Intent IQ in this District. (D.I. 19, Ex. B).  Roughly six

---

[1] The Patents-in-Suit are United States Patent Nos. 8,677,398, 10,715,878, 7,822,639, 8,244,586, 10,026,100, 10,628,857, 8,566,164, 8,595,069, and 10,321,198.

1

hours later, AlmondNet and Intent IQ filed an action in the Western District of Texas against Roku, alleging infringement of the Patents-in-Suit.  (*Id.*, Ex. B, Ex. C).  Roughly one month later, AlmondNet filed another suit against Roku in the Western District of Texas, alleging infringement of three patents not at issue in the present dispute.  (W.D. Tex. No. 21-876-ADA).  Two weeks later, Defendants initiated four additional actions in the Western District of Texas, all of which alleged infringement of the Patents-in-Suit.  The defendants in those cases are Samsung (W.D. Tex. No. 21-891-ADA), Facebook (W.D. Tex. No. 21-896-ADA), Microsoft (W.D. Tex. No. 21-897-ADA), and Amazon (W.D. Tex. No. 21-898-ADA).

AlmondNet and Intent IQ now move to dismiss the present action or transfer it to the Western District of Texas.  (D.I. 13).  Defendants assert that Plaintiff's first-in-time suit should not be given priority over its later-filed action, and that the balance of public and private factors weigh in favor of transferring the present action to the Western District of Texas.  (D.I. 14). Plaintiff opposes Defendants' motion, contending that the first-to-file rule should lead this Court to refuse to transfer the case, that this case could not have originally been brought in the Western District of Texas, and even if it could have, the balance of private and public interests do not weigh in favor of a transfer.  (D.I. 19).

## II.   LEGAL STANDARD

"A plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'"  *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)).  Plaintiff's choice of location in bringing the action "should not be lightly disturbed."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

District courts have the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been

brought." 28 U.S.C. § 1404(a). The Third Circuit has made clear that, to find that an action "might have been brought" in a district, "venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all of the defendants." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970).

If a court finds that an action "might have been brought" in the proposed transferee district, the court must then consider whether transfer is appropriate. To these ends, the Third Circuit has recognized that:

> courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Jumara*, 55 F.3d at 879 (citation omitted). The *Jumara* court went on to describe twelve "private and public interests protected by the language of § 1404(a)." *Id*. The private interests include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). The public interests include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

3

*Id.* at 879-80.  The party seeking transfer bears the burden "to establish that a balancing of proper interests weigh[s] in favor of transfer."  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).  Courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer."  *Jumara*, 55 F.3d at 883.  However, "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail."  *Shutte*, 431 F.2d at 25.

When there are parallel actions in different districts, courts must also consider the first-to-file rule in deciding a motion to transfer.  In patent actions, Federal Circuit law controls application of the first-to-file rule.  *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345–46 (Fed. Cir. 2005).  Federal Circuit law counsels that the forum of "[t]he first-filed action is preferred, even if it is declaratory, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise."  *Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037 (Fed. Cir. 1995) (internal quotation marks and citations omitted).  Among the reasons to decline to apply the first-to-file rule are "the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest."  *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  There must "be sound reason that would make it unjust or inefficient to continue the first-filed action" and transfer the case.  *Id.* at 938.

### III.  DISCUSSION

#### A.  1404(a) First Step: Appropriate Venue

Section 1404(a) permits a district court to "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Plaintiff does not consent to transfer to the Western District of Texas.  Therefore, the

4

Court must address the threshold inquiry under § 1404(a) – whether this action "might have been brought" in the Western District of Texas.

To find that an action "might have been brought" in a district, "venue must have been proper in the transferee district ***and the transferee court must have had power to command jurisdiction over all of the defendants.***" *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970) (emphasis added). Defendants argue that each of these requirements is satisfied. First, Defendants argue that because "a substantial part of the events . . . giving rise to the claim occurred" in the Western District of Texas, and because Plaintiff maintains an office there, venue is appropriate in the District. (D.I. 22 at 4–5). Defendants also argue that the personal jurisdiction requirement is satisfied because they filed six enforcement actions in that District and consent to jurisdiction in that District. (*Id.* at 5).

Here, the Court finds that transfer would be inappropriate because the Western District lacked personal jurisdiction over Defendants when Plaintiff filed the present action. Defendants' primary argument for the existence of personal jurisdiction is that its later-filed enforcement actions in the Western District permit the District to exercise jurisdiction over them. But this argument ignores the text of § 1404(a) and the Supreme Court's analysis of that statute in *Hoffman v. Blaski*, 363 U.S. 335 (1960). In *Hoffman*, the Court held that § 1404(a)'s dictate that transfer be limited to districts "where it might have been brought" allows a court to transfer cases only to those venues that would have been appropriate at the time the plaintiff brought its initial action. The Supreme Court explained that § 1404(a)'s "phrase 'where it might have been brought' can[not] be interpreted to mean . . . 'where it may now be rebrought . . . .'" *Id.* at 342–43. The Court went on to explain that "we do not see how the conduct of a defendant after suit has been instituted can add to the forums where it might have been brought. In the normal meaning of

5

words this language of Section 1404(a) directs the attention of the judge who is considering a transfer to the situation which existed when suit was instituted." *Id.* at 343–44. *See also Tlapanco v. Elges*, No. 15-CV-2852 (AJN), 2017 WL 4329789, at *4 (S.D.N.Y. Sept. 14, 2017) (explaining that *Hoffman* held that "absent the consent of all parties, the transferee district must be one where the plaintiff would have had 'a right to bring [the] action[ ]' at the time the action was commenced.").

All of Defendants' actions in the Western District of Texas arose after the present action was filed. Even assuming the correctness of Defendants' assertion that its enforcement actions in the Western District of Texas permit that District to exercise personal jurisdiction over them, that jurisdiction would have arisen only *after* Roku filed this action. Therefore, these later-filed actions cannot support an argument that the Western District of Texas could have exercised jurisdiction over AlmondNet and Intent IQ when Roku filed this declaratory action. For the very same reason, Defendants' argument that they now consent to jurisdiction in the Western District of Texas does not confer jurisdiction at the time Roku filed the present action.

Because the Court finds that personal jurisdiction would have been lacking in the Western District of Texas when Plaintiff filed this instant action, Defendants' transfer motion must be DENIED.

B. **First-to-File**

As transfer has been deemed inappropriate, the Court will now consider whether to dismiss this action in light of the later-filed infringement suit.

Where there are parallel proceedings in two federal courts, the first-to-file rule generally expresses a preference for the court with the first-filed action to hear the case. "Although district courts can . . . dispense with the first-to-file rule, there must 'be sound reason that would make it unjust or inefficient to continue the first-filed action.'" *Communications Test Design, Inc. v.*

6

*Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020) (quoting *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993)).  The burden is on the party seeking to establish a compelling circumstances exception to the first-to-file rule.  *In re Nitro Fluids L.L.C.*, 978 F.3d 1308, 1311 (Fed. Cir. 2020).  In this case, the Court finds that Defendants have not met their burden of demonstrating sound reasons that would justify departing from the first-filed rule.

Defendants contend that Plaintiff's suit was anticipatory, and therefore should not be treated as the first-filed suit.  A court may consider whether a party filed suit to preempt another's infringement suit when ruling on the dismissal or transfer of a declaratory action.  *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005).  A suit is "anticipatory for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *Woodbolt Distribution, LLC v. Natural Alternatives Intern., Inc*. No. 11-1266-GMS, 2013 WL 247041, at *4 (D. Del. Jan. 23, 2013) (citation omitted).  Here, when the parties decided to terminate licensing negotiations, Roy Shkedi, the CEO of Defendant AlmondNet and Chairman of Defendant Intent IQ, told Gil Fuchsberg, an executive with Plaintiff Roku, that AlmondNet and Intent IQ would be filing an infringement action against Roku in Texas "that very same day." (D.I. 16 ¶ 6).

Therefore, it appears that Roku may have "filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent."  But it does not necessarily follow that Roku filed suit because it believed Defendants' infringement suit to be imminent.  Instead, it is just as likely that Roku, after more than a year of unfruitful negotiation with entities who believe it to be infringing their patents, resorted to the courts to declare its "rights" and "legal relations" – exactly what 28 U.S.C. § 2201 is designed to do.  The Court cannot conclude that Roku filed the

7

action in bad faith or to avoid what it perceived as an unfavorable forum. *Cf. Commc'ns Test Design, Inc. v. Contec LLC*, 367 F. Supp. 3d 350 (E.D. Pa. 2019) (declining to apply the first-to-file rule in a case where the plaintiff filed suit after inducing the defendant to believe negotiations were still possible and ongoing), *aff'd*, 952 F.3d 1356 (Fed Cir. 2020); *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969 (3d Cir. 1988) (instructing that courts may refuse to apply the first-filed rule "when the first-filing party instituted suit in one form in anticipation of the opposing party's imminent suit in another, less favorable forum."). Based on the unique circumstances of this case, the timing of this suit does not supply reasons to decline to exercise jurisdiction over the present action.

Defendants have also failed to meet their burden of arguing that other factors should lead the Court to decline jurisdiction over Plaintiff's declaratory action. Defendants assert that the "convenience and availability of witnesses" favors dismissal but have not shown that any relevant witnesses would find litigating in Texas more convenient than litigating in Delaware. Although Defendants point to Roku's physical presence in the Western District of Texas (D.I. 15), Plaintiff asserts that its employees in Austin, Texas do not possess knowledge relevant to the present dispute. (*See* D.I. 19, Ex. A ¶ 6). Rather, Plaintiff states that the majority of its employees with relevant knowledge are based out of its Boston, Massachusetts office. (*Id.* ¶¶ 6–8). The Court finds Plaintiff's assertions more credible on this front. Further, the Court notes that Defendants are organized and exist under the laws of Delaware, and so are presumably not inconvenienced by litigating in Delaware. *See Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011) ("Given that both parties were incorporated in Delaware, they had both willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware.").

Defendants also argue that judicial economy favors Texas over Delaware, but the Court does not find that judicial economy can justify dismissal in this case. To begin with, the Federal Circuit has cautioned against allowing co-pending litigation to dominate an analysis of judicial economy. *See In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017). On the record before it, the Court is concerned that finding the "judicial economy" factor dispositive would permit parties to fashion an exception to the first-to-file rule. After being sued in the District of Delaware, Defendants chose to file four separate infringement actions against corporations in the Western District of Texas – four of whom Defendants allege to be corporations organized and existing under the laws of Delaware (W.D. Tex. No. 21-896-ADA, D.I. 1 ¶ 3; W.D. Tex. No. 21-898, D.I. 1 ¶¶ 3–5). The Court is not persuaded by Defendants' argument that judicial economy justifies a departure from the first-to-file rule here, as it was Defendants' own litigation strategy that brought litigation to the Western District of Texas. Therefore, the Court does not find this consideration to be a sound reason to dismiss hearing the present action.

For the above reasons, the Court does not find it appropriate to decline to exercise jurisdiction over the present action. Accordingly, Defendants' motion to dismiss is DENIED.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or transfer the case is DENIED. An appropriate order will follow.