

April 12, 2023

**VIA E-FILING**
The Honorable Maryellen Noreika
United States District Court Judge, District of Delaware
844 North King Street
Wilmington, DE 19801

    Re:   *Roku, Inc. v. AlmondNet, Inc., et al.*,
           C.A. No. 21-cv-1035-MN (Consolidated)

Dear Judge Noreika:

    We write on behalf of Defendants AlmondNet, Inc., and Intent IQ, LLC (together, "AlmondNet") in this patent infringement case against Plaintiff Roku, Inc. Both parties have expressed a desire to substantially narrow the number of patents/claims at issue before *Markman* proceedings. Consistent with that goal, AlmondNet proposes that the case be narrowed to the 50 patent claims identified in its recent election of asserted infringement claims.

    When this case was consolidated in January 2023 (D.I. 70), the case involved twelve patents[1] and 217 patent claims. These patents/claims included:

- 151 claims identified in AlmondNet's preliminary infringement contentions and for which Roku asserted DJ claims of non-infringement and invalidity; and

- 66 claims identified in Roku's declaratory judgment complaint and for which AlmondNet has never asserted infringement in this case ("DJ-only claims")

    On April 7 and 10, 2023, AlmondNet substantially narrowed its infringement case and dropped 101 claims, including all asserted claims for four patents. As a result, AlmondNet is currently asserting infringement of 50 claims across eight patents.[2]

    The parties appear to agree that 50 claims is a manageable number given the stage of this case (before claim construction). The parties' dispute centers on the treatment of the other 167

---

[1] The twelve patents are: US Patents 8,244,586 ("'586 patent"); 10,026,100 ("'100 patent"); 8,677,398 ("'398 patent"); 10,715,878 ("'878 patent"); 8,566,164 ("'164 patent"); 10,321,198 ("'198 patent"); 10,628,857 ("'857 patent"); 7,822,639 ("'639 patent"); 8,595,069 ("'069 patent"); 8,671,139 ("'139 patent"); 8,959,146 ("'146 patent"); and 8,244,582 ("'582 patent"). D.I. 70.

[2] The 50 claims AlmondNet is currently asserting are: '398 patent: claims 13, 15, 17–18, 22; '878 patent: claims 1, 6; '164 patent: claims 1–2, 5-7, 11–12; '198 patent: claims 1–2, 4–6, 9, 17; '069 patent: claims 4–5, 9, 17; '139 patent: claims 1, 37, 41–43, 45, 48–49; '146 patent: claims 1, 5–9, 21; and '582 patent: claims 1, 3-5, 9–11, 13–15. *See* Ex. A.

claims, comprising DJ-only claims and dropped claims. For the reasons below, AlmondNet believes that (a) the DJ-only claims should be dismissed for lack of DJ jurisdiction and (b) the dropped claims should be dismissed without prejudice.

## I. DJ-Only Claims

The DJ-only claims are 66 claims listed in Roku's declaratory judgment complaint and for which AlmondNet has never asserted infringement in this case. Because Roku fails to show an ongoing case or controversy for those claims, they should be dismissed for lack of DJ jurisdiction.

### A. Background and Legal Standard

On July 15, 2021, Roku filed a complaint for declaratory judgment of non-infringement for 150 claims, including the 66 DJ-only claims at issue.[3] D.I. 1 at ¶¶ 40, 46, 54, 62, 70, 78, 86, 94, 102. On August 27, 2021, AlmondNet filed its answer and counterclaims. D.I. 12. The counterclaims assert that Roku's products satisfy "claims" of AlmondNet's patents and pleads infringement of one independent claim per patent. *Id.* at ¶¶ 8, 19, 30, 41, 52, 63, 74, 85, 96. The counterclaims do not identify any DJ-only claims or map them against the accused products.

On August 26, 2022, AlmondNet served its preliminary infringement contentions in this case. The contentions do not list or assert infringement of any DJ-only claims. *See* Ex. B. On March 7 and 29, 2023, AlmondNet served final infringement contentions. The final contentions do not list or assert infringement of any DJ-only claims. *See* Ex. C. Therefore, AlmondNet has never asserted infringement of the DJ-only claims in this case, including in its answer or infringement contentions (or any amendments thereto).

"It is well-established that, in patent cases, the existence of a case or controversy must be evaluated on a claim-by-claim basis." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1281 (Fed. Cir. 2012). Further, "jurisdiction must exist at all stages of review, not merely at the time the complaint was filed." *Id.* at 1282. The party seeking a declaratory judgment bears the burden of establishing the existence of an actual case or controversy. *Id.* It must show that jurisdiction existed at the time of the complaint "and that it has continued since." *Id.*

### B. Roku Fails to Show DJ Jurisdiction After August 2022

Here, Roku fails to establish an actual case on controversy for the DJ-only claims after August 2022, when AlmondNet's infringement contentions were served. Those contentions confirmed that AlmondNet was not asserting (and had not asserted) any of the 66 DJ-only claims in this case. Indeed, Roku can point to no infringement allegation for the DJ-only claims after its complaint was filed on July 15, 2021. In these circumstances, Roku cannot show an ongoing case or controversy for the DJ-only claims that were never even asserted in this case. *See Streck*, 665

---

[3] The 66 DJ-only claims are: '586 patent: claims 2, 11–13, 16, 17, 20–22; '100 patent: claims 15–17, 19, 21, 23–25, 27–31, 33, 35, 38–49, 41–42; '398 patent: claim 26; '878 patent: claims 3–4, 10–23; '164 patent: claim 3; and '639 patent: claims 1–8, 10, 13–14, 27–28, 36–37, 39, 43, 45, 47.

F.3d at 1284. ("[W]e agree with the district court's determination that it lacked jurisdiction over the unasserted claims. Importantly, there is no evidence that R & D met its burden of showing a continuing case or controversy with respect to the unasserted claims").

In the parties' meet and confers, Roku identified only two bases for DJ jurisdiction after August 2022: (1) that AlmondNet identified the DJ-only claims in pre-suit claim charts during licensing discussions in August 2020; and (2) that AlmondNet has not granted Roku a covenant-not-to-sue on the DJ-only claims. Both fail.

*First*, the mere identification of claims in pre-suit licensing discussions in August 2020 is insufficient to maintain DJ jurisdiction after August 2022. Roku relied on the pre-suit discussions to argue in its July 2021 complaint that "there is a substantial controversy of sufficient immediacy and reality between Roku and AlmondNet." D.I. 1 at ¶ 42. But even if such a controversy existed as of July 2021, it was negated by subsequent events, including AlmondNet's answer and counterclaims (in August 2021), preliminary infringement contentions (in August 2022), and final infringement contentions (in March 2023). That AlmondNet never asserted any DJ-only claim in this case for two years confirms the lack of substantial controversy of "sufficient immediacy and reality" to warrant DJ jurisdiction for those claims.

*Streck* is instructive on this point. There, the Federal Circuit agreed that the district court lacked jurisdiction over six claims that were asserted in the patentee's infringement contentions but later dropped. *See Streck*, 665 F.3d at 1283–84 (Fed. Cir. 2012). Here, the DJ-only claims were not even asserted in AlmondNet's infringement contentions. And there is no reason to believe that parties' pre-suit discussions in August 2020 can supply an ongoing case or controversy for never-asserted claims through April 2023 (two years and eight months later).

*Second*, that AlmondNet has not granted Roku a covenant on the DJ-only claims is irrelevant. AlmondNet has not done so because it believes that Roku failed to meet its threshold burden to establish DJ jurisdiction. Indeed, the Federal Circuit has suggested that the failure to provide a covenant should not be considered affirmative evidence for the existence of a case or controversy in the first place. *See 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1382 (Fed. Cir. 2012) ("[I]f the district court on remand concludes that Avery's communications with 3M . . . are sufficient to raise a case or controversy, it might also conclude that Avery's failure to provide 3M with a covenant not to sue *did not, at the very least, lessen that existing controversy*."). Rather, it should only be considered as further support if an actual controversy is found to exist.

Here, Roku's demand for a covenant is circular and highlights its lack of evidence for an actual case or controversy after August 2022. The Court should exercise its discretion to dismiss the DJ-only claims and to streamline this case by removing 66 additional claims.

## II. Dropped Claims

The dropped claims are 101 claims that AlmondNet recently withdrew to narrow its infringement case. AlmondNet withdrew those claims voluntarily "[f]or purposes of

3

streamlining this case in advance of final invalidity contentions and claim construction proceedings." Ex. A.

The dropped claims were dismissed without prejudice. Indeed, a patentee's voluntary withdrawal of previously asserted patent claims is "akin to either a Federal Rule of Civil Procedure 15 amendment to the complaint . . . or a Rule 41(a) voluntary dismissal of claims without prejudice." *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1353 (Fed. Cir. 2012). That the claims were dropped upon Roku's request—and to further the parties' goals of streamlining claim construction proceedings—confirms this is the appropriate outcome.

Roku's position that the dropped claims should be dismissed *with prejudice* is unsupported. The cases Roku may rely on are inapposite because they involve dropping claims on the eve of trial, and well after the claims were ready for resolution on the merits. Here, AlmondNet withdrew the claims before proceedings, expert discovery, dispositive motions, pre-trial, and trial. And the record (including the parties' current request on claim narrowing) demonstrates that the claims were dropped to streamline this case and well before (and certainly not to avoid) any potential dispositive ruling by the Court.

Roku may also argue that AlmondNet is "litigious" or decry the possibility of future litigation on the dropped claims. These aspersions are unfounded and cannot justify treating special adverse treatment against AlmondNet in this case. Where Roku has not obtained any ruling or judgment on the merits concerning the dropped claims, there is no basis to deem them dismissed with prejudice. And if Roku obtains a final judgment on the merits in this case, it will have the right to argue for claim preclusion in a future case. Indeed, where the doctrines of claim preclusion / splitting already exist (as well as other protections, to the extent recognized by the law), there is no basis to believe they would be insufficient and to grant Roku special relief now. Roku can raise those arguments if and when a future case is ever filed. But there is no reason to penalize AlmondNet for simply narrowing the case as Roku requested.

It is unclear whether Roku intends to maintain its declaratory judgment claims for the 101 claims that AlmondNet dropped. Doing so would triple the number of claims at issue and increase the patents-in-suit from eight to twelve. AlmondNet believes that those claims should be dismissed without prejudice, consistent with the treatment of the infringement claims. Depending on Roku's position, AlmondNet reserves the right to address this issue with the Court or seek appropriate relief.

Respectfully submitted,

*/s/ Michael J. Farnan*

Michael J. Farnan

cc: Counsel of Record (Via E-Filing)