IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROKU, INC.,                              )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )     C.A. No. 21-1035 (MN)
                                         )
ALMONDNET, INC. and INTENT IQ,           )
LLC,                                     )
                                         )
                    Defendants.          )

## <u>MEMORANDUM ORDER</u>

At Wilmington, this 29th day of May 2024:

The Court heard argument about the disputed claim terms of U.S. Patent Nos. 8,677,398 ("the '398 Patent"), 10,715,878 ("the '878 Patent"), 8,566,164 ("the '164 Patent"), 10,321,198 ("the '198 Patent"), 8,595,069 ("the '069 Patent"), 8,671,139 ("the '139 Patent"), 8,959,146 ("the '146 Patent"), and 8,244,582 ("the '582 Patent) on July 7, 2023.  (D.I. 147).  IT IS HEREBY ORDERED that the claim terms of the '878 Patent, the '198 Patent, the '139 Patent, and the '146 Patent, as well as U.S. Patent Nos. 7,822,639 ("the '639 Patent"), 8,244,586 ("the '586 Patent), 10,026,100 ("the '100 Patent"), and 10,628,857 ("the '857 Patent"), with agreed-upon constructions are construed as follows (*see* D.I. 136 at 5):

1.    The preambles of claim 1 of the '878 Patent, claim 1 of the '198 Patent, claims 1 and 37 of the '139 Patent, and claims 1 and 21 of the '146 Patent are limiting;

2.    "third-party server computer" means "server controlled by an entity that is distinct from the entit(ies) controlling the [computer system] / [system comprising one or more computers] performing the claimed method" ('139 Patent, claims 1, 37; '146 Patent, claims 1, 21); and

3.      "off-site advertisement" / "off-site" means "advertisement that is derived from outside of the immediate local context of a present site" and "outside of the immediate local context of a present site," respectively ('639 Patent, claim 1; '586 Patent, claim 1; '100 Patent, claims 1, 15, 29; '857 Patent, claim 1).

Further, as announced at the hearing on July 7, 2023, IT IS HEREBY ORDERED that the disputed claim terms of the '398 Patent, the '878 Patent, the '164 Patent, the '198 Patent, the '069 Patent, the '139 Patent, the '146 Patent, and the '582 Patent are construed as follows:

1.      "automatically with the computer system" / "automatically" / "automatic" means "done with little to no human control" ('582 Patent, claims 1, 4–5, 9–11, 14–15; '139 Patent, claims 1, 37; '146 Patent, claims 1, 21; '164 Patent, claim 1; '398 Patent, claim 22; '069 Patent, claims 4–5; '198 Patent, claims 1, 4–5);

2.      "available" means "electronically available" ('582 Patent; claims 1, 11);

3.      "URL redirection" means "obtaining a requested webpage or a portion of a requested webpage from a different location" ('582 Patent, claims 1, 10, 11);

4.      "electronic indicia"/ "indicia" is not indefinite and means "electronic data indicative of;" "electronic indicia indicating" means "electronic data indicating" ('398 Patent, claim 18; '198 Patent, claim 2);

5.      "at least in part on at least a portion" is not indefinite and is construed as having its plain and ordinary meaning ('398 Patent, claim 22; '878 Patent, claim 6);

6.      "unaffiliated third [party]/[parties]" is not indefinite and means "not closely associated or related" ('582 Patent, claims 1, 5, 11, 15);

7.      "partial profile" is not indefinite and is construed as having its plain and ordinary meaning ('582 Patent, claims 1, 3, 4, 11, 13, 14);

8.      "indicia of instructions" / "indicia of a condition" / "indicia" is not indefinite and means "data indicative of" ('582 Patent, claims 11, 15; '139 Patent claims, 1, 37; '146 Patent, claims 1, 5–6, 8, 21); and

9.      "possibly applicable" is not indefinite and means "possible to be applied" ('139 Patent, claims 1, 37; '146 Patent, claims 1, 21).

In addition, for the reasons set forth below:

1.      The preamble of claim 1 of the '582 Patent is not limiting; and

2.      the preamble of claim 11, to the extent it differs from the preamble of claim 1, of the '582 Patent is limiting.

The parties briefed the issues (D.I. 136) and submitted supplemental briefing concerning the preambles of claims 1 and 11 of the '582 Patent.  (D.I. 145 & 146).[1]  The Court carefully reviewed all submissions in connection with the parties' contentions regarding the disputed claim terms, heard oral argument (*see* D.I. 147) and applied the legal standards below in reaching its decision.

## I.      LEGAL STANDARDS

### A.      Claim Construction

"[T]he ultimate question of the proper construction of the patent [is] a question of law," although subsidiary fact-finding is sometimes necessary.  *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325 (2015).  "[T]he words of a claim are generally given their ordinary and customary meaning [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (internal citations and quotation marks omitted).  Although "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim must also be considered.  *Id.* at 1314.  "[T]he ordinary meaning of a claim term is its meaning

---

[1]      The original briefing covered the disputed constructions for all terms (D.I. 136).  Because new arguments were raised at the Markman hearing, the Court requested supplemental briefing on constructions for the disputed preamble terms.  (D.I. 147 at 23:25-24:3).  Plaintiff submitted its brief on July 10, 2023 (D.I. 145) and Defendants responded on July 11, 2023.  (D.I. 146).

to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted).

The patent specification "is always highly relevant to the claim construction analysis . . . [as] it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. "Even when the specification describes only a single embodiment, [however,] the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal quotation marks omitted) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The prosecution history, which is "intrinsic evidence, . . . consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

In some cases, courts "will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the

4

meaning of a term in the relevant art during the relevant time period." *Teva*, 574 U.S. at 331. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318. Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, although extrinsic evidence "may be useful to the court," it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

**B.    Indefiniteness**

"The primary purpose of the definiteness requirement is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, e.g., competitors of the patent owner, can determine whether or not they infringe." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779-80 (Fed. Cir. 2002) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 28-29 (1997)). Put another way, "[a] patent holder should know what he owns, and the public should know what he does not." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002).

A patent claim is indefinite if, "viewed in light of the specification and prosecution history, [it fails to] inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). A claim may be indefinite if the patent does not convey with reasonable certainty how to measure a claimed feature. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015). But "[i]f such an understanding of how to measure the claimed [feature] was within the scope of knowledge possessed by one of ordinary skill in the art, there is no requirement for the specification to identify a particular measurement technique." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1319 (Fed. Cir. 2015).

Like claim construction, definiteness is a question of law, but the Court must sometimes render factual findings based on extrinsic evidence to resolve the ultimate issue of definiteness. *See, e.g.*, *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1376 (Fed. Cir. 2017); *see also Teva*, 574 U.S. at 334-36. "Any fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence." *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003); *see also Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008).

## II.     THE COURT'S RULING

The Court's ruling regarding the disputed claim terms of the '398 Patent, the '878 Patent, the '164 Patent, the '198 Patent, the '069 Patent, the '139 Patent, the '146 Patent, and the '582 Patent, with the exception of the preambles of claims 1 and 11 of the '582 Patent, was announced during the Markman hearing on July 7, 2023, as follows:

At issue, there are ten disputed claim terms in eight patents.[2]  I am prepared to rule on nine of the disputes.  I will not be issuing a written opinion, but I will issue an order stating my rulings.  I want to emphasize before I announce my decisions that although I am not issuing a written opinion, we have followed a full and thorough process before making the decisions I am about to state.  I have reviewed the patents and all the evidence submitted by the parties.  There was full briefing on each of the disputed terms and we had argument today.   All of that has been carefully considered.

As to my rulings, I am not going to read into the record my understanding of claim construction law and indefiniteness.  I have a legal standard section that I have included in earlier opinions, including somewhat recently in *REX Computing, Inc. v. Cerebras Systems Inc.*, Civil Action No. 21-525 (MN).  I incorporate that law and adopt it into my ruling today and will also set it out in the order that I issue.

First, the preambles of claims 1 and 11 of the '582 Patent: The parties disagree whether the preambles are limiting.  Plaintiff asserts that they are and Defendants argue that they are not.  As we have already discussed, there were some new arguments raised today that were not briefed.  And I have asked for short additional submissions next week.

The second group of terms are the "automatically" terms – "automatically with the computer system"/ "automatically"/ "automatic" – in multiple claims of the asserted patents.[3] Defendants proposed the Court adopt the plain and ordinary meaning of the term, "wherein 'automatically' / 'automatic' does not mean 'manually' / 'manual.'"   Plaintiff proposes the construction, "not manually."  Today, Defendants agreed that the ordinary meaning of automatically is "done with little to no human control."  I will adopt that plain and ordinary meaning.

---

2    U.S. Patent No. 8,677,398 ("the '398 Patent"), U.S. Patent No. 10,715,878 ("the '878 Patent"), U.S. Patent No. 8,566,164 ("the '164 Patent"), U.S. Patent No. 10,321,198 ("the '198 Patent"), U.S. Patent No. 8,595,069 ("the '069 Patent"), U.S. Patent No. 8,671,139 ("the '139 Patent"), U.S. Patent No. 8,959,146 ("the '146 Patent"), and U.S. Patent No. 8,244,582 ("the '582 Patent").

3    Claims 1, 4–5, 9–11, and 14–15 of the '582 Patent; claims 1 and 37 of the '139 Patent; claims 1 and 21 of the '146 Patent; claim 1 of the '164 Patent; claim 22 of the '398 Patent; claims 4–5 of the '069 Patent; claims 1 and 4–5 of the '198 Patent.

Defendants' main argument for "not manually" is that in parts of the prosecution history for various patents, applicants commented on a lack of human action. In particular, Plaintiff cites to a statement in the IPR for the '398 Patent[4] distinguishing prior art, noting that "[b]ecause clicking on the login button represents a request from the user . . . to perform the alleged 'recognizing' and 'generating and storing' steps, these steps do not occur 'automatically' as the claim[5] requires."[6] I cannot, however, read that to mean that no prior human action is permitted, particularly given that the following paragraph allows that "some user action could be permissible," as long as that action is not sufficient to "negate[] the recited steps being done 'automatically.'"[7]

Plaintiff also points out that claims of the '139 Patent were amended to include that certain steps were automatically performed.[8] And that is true. I cannot, however, read that to clearly mean that no prior human conduct insufficient to negate the automation claimed is possible.

Finally, Plaintiff cites to the prosecution of the '639 Patent,[9] which is not a patent that's asserted claims use this term. There, the applicants noted that during an interview they added "automatically" in certain claim elements to make clear that the computer was doing the action. This is where the applicant used the phrase as "opposed to 'manual.'"[10] I read this as requiring that a computer perform an action, but again, do not believe it clearly and unambiguously precludes prior human conduct that does not negate the action being automatically done.

So I will construe the "automatically" terms to mean "done with little to no human control." And whether there is too much

---

[4]   (D.I. 137, Ex. 33 at 40).

[5]   It appears that claims 36 and 37 of the '398 patent were at issue in the IPR.

[6]   (D.I. 137, Ex. 33 at 40).

[7]   *Id.*

[8]   (*See* D.I. 137, Ex. 39).

[9]   (D.I. 137, Ex. 9 at 17-18).

[10]   *Id.*

human control for something to be considered automatic appears to me to be a fact issue for the jury.

The third term is "available" in claims 1 and 11 of the '582 Patent. There was a dispute in the briefs about this but today everyone agreed that this means "electronically available." I will adopt that construction.

The fourth term is "URL redirection" in claims 1, 10, and 11 of the '582 Patent. Defendants propose the construction "obtaining certain information for at least a portion of an accessed page / site from a different location." Plaintiff proposes the construction "obtaining a requested webpage from a different location." I will adopt a hybrid of the Plaintiff's proposal: "obtaining a requested webpage or a portion of a requested webpage from a different location."

I think this is supported by the intrinsic evidence. Element (b) of claims 1 and 11 of the '582 Patent require that "receiving the partial profile is achieved as a result of automatic electronic URL redirection from a portion of a page of the website accessed by the user computer." Similarly, the specification states that "[t]he website forwards . . . (optionally) a redirect to a portion of the visitor's page to a server located in cyberspace . . . . By redirecting a portion of the visitor's page to the server, the visitor's browser reports to the server a cookie the server put on the visitor's computer in the past, if any."[11] The specification also states that "[t]he user enables the server attached to the databank to receive the cookie it installed by redirecting a portion of the visitor page to the databank's server[]."[12]

Plaintiff relies on the '582 Patent's prosecution history, specifically the prosecution of a parent patent (the '307 Patent).[13] Although Plaintiff has identified statements from the patent history that refer to examples of computing dictionary definitions, and one of those is consistent with Plaintiff's proposed construction, I do not find the "example" given to be a clear and unambiguous

---

[11]   ('582 Patent at 4:2-8).

[12]   ('582 Patent at 12:2-4).

[13]   (D.I. 137, Ex. 41 at 6-7).

definition.[14]   Nor do I think that they otherwise undermine the statements in the specification I have already noted.

The fifth term "electronic indicia"/ "indicia" in claim 18 of the '398 Patent and claim 2 of the '198 Patent, as well as the eighth term "partial profile" in claims 1, 3, 4, 11, 13, and 14 of the '582 Patent, the ninth term, "indicia of instructions" / "indicia of a condition" / "indicia" in various claims,[15] and the tenth term, "possibly applicable" in claims 1 and 37 of the '139 Patent and claims 1 and 21 of the '146 Patent, I have already told you that I do not find Plaintiff has met its burden to prove indefiniteness by clear and convincing evidence and in the absence of any counterproposals will adopt the Defendants' proposals for those terms.  Plaintiff may, if appropriate, raise this issue in connection with summary judgment if additional evidence is adduced.

I think I am going to say the same thing for the sixth term, "at least in part on at least a portion" in claim 22 of the '398 Patent and claim 6 of the '878 Patent.  Plaintiff has not met its burden.  And I do think that this case is distinguishable from the *Zadro* case Plaintiff relies on.[16]  In *Zadro*, Judge Bryson was addressing the claim element "at least in part generally concentrically aligned."[17] He did note that in that claim the language "at least in part" was problematic, but I read that really as being problematic in the context with the other language.  So I cannot say as a matter of law that Plaintiff has met its burden for this term.  And will give those terms their plain and ordinary meaning.

Finally, the seventh term argued is "unaffiliated third [party]/[parties]" in claims 1, 5, 11, 15 of the '582 Patent. Defendants propose the construction "a party not having common ownership with the party or parties that control said programmed computer system."  Plaintiff argues that this term is indefinite and lacks reasonable certainty as to scope.

---

14      *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016).

15      Claims 11 and 15 of the '582 Patent; claims 1 and 37 of the '139 Patent; claims 1, 5–6, 8, and 21 of the '146 Patent.

16      *Zadro Prods., Inc. v. SDI Techs., Inc.*, No. 17-1406 (WCB), 2019 WL 10252726 (D. Del. June 19, 2019).

17      *Id.* at *1-4.

I have struggled with this term. The patent really provides no guidance at all as to what unaffiliated means. Defendants rely on portions of column 3 of the '582 Patent[18] and Roku's corporate privacy statement to support their reading. I do not find either of those to be helpful. The specification does not say anything about the affiliation status of the entities mentioned – whether affiliated or unaffiliated. And it certainly says nothing about their corporate or business ownership. So I reject Defendants' proposal.

And although I was tempted to find that the term is indefinite, I think the more prudent course is to let discovery play out and see if there is additional information that comes out that would be relevant to Plaintiff's arguments.

So I am going to give unaffiliated its plain and ordinary meaning, which according to some of the dictionary definitions that we saw during the hearing, I am going to say is "not closely associated or related."

(D.I. 147 at 89:25-96:11).

As noted, the Court did not decide at the hearing whether the preambles of claims 1 and 11 of the '582 Patent are limiting. Plaintiff argues that they are limiting, and Defendants argue that they are not.

Preambles generally do not limit claims. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002). A preamble, however, may serve as a claim limitation in certain instances, such as when the preamble "recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Pitney Bowes*, 182 F.3d at 1305). A preamble may also be limiting when the claim limitations in the body of claim "rely upon and derive antecedent basis from the preamble." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003). On the other hand, when the claim body recites a structurally complete invention and the

---

18       ('582 Patent at 3:33-47).

preamble language is used merely to state the purpose or intended use of the invention, the preamble is generally not treated as limiting the scope of the claim. *Catalina*, 289 F.3d at 808. *See also Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006).

There is no "litmus test" for determining whether preamble language is limiting. *Catalina*, 289 F.3d at 808. Rather, whether such language is limiting is assessed in regard to "the facts of each case in light of the claim as a whole and the invention described in the patent." *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003). *See also Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358 (Fed. Cir. 2010); *Catalina*, 289 F.3d at 808 ("Whether to treat a preamble as a limitation is a determination resolved only on review of the entire . . . patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." (internal quotation marks and citation omitted)).

The preamble of claim 1 recites "[a]n automated method of collecting profiles of Internet-using entities, the method comprising."[19] Plaintiff argues that this preamble is limiting because it requires that the method be automated, and the phrase "Internet-using entities" gives meaning to the phrase "global computer network." (D.I. 136 at 7). Defendants argue that the preamble is not limiting because claim 1 recites a structurally complete invention and the preamble is used to state an intended purpose of use. (D.I. 136 at 6-7).

According to Plaintiff, the inclusion of "automated" in the preamble is limiting because if it is not limiting, the claim could be infringed by performing a method in which some steps were automatically performed, and others were manually performed. Plaintiff points to statements made by AlmondNet in its Patent Owner's Preliminary Response ("POPR") to Covered Business Method ("CBM") challenges raised by Yahoo! Inc. before the Patent Trial and Appeal Board.

---

[19]     ('582 Patent at 16:42-43).

Plaintiff characterizes AlmondNet's statements in its POPR, specifically that "the claims do not deal with human decision-making or activities," as admissions that "convey core and fundamental characteristics of the claims which AlmondNet used to overcome Yahoo!'s § 101 challenge." (D.I. 145 at 1).  Defendants respond that AlmondNet was not "disavowing any human involvement whatsoever," but rather distinguishing "the computer-centric claims of the '582 Patent from a category of "claims relating to 'interpersonal and intrapersonal activities,'" which courts have sometimes held to be abstract.  (D.I. 146 at 1).  In addition, Defendants emphasize that AlmondNet never "sa[id] that the *entirety* of the claimed method must be performed automatically" and argue that the inclusion of automatic steps in claim 1 does not require that "the entire method . . . be performed *solely* by a programmed computer without any human interaction," but rather "supports the 'automatic nature' of the process."  *Id.*

Notwithstanding Plaintiff's focus on "automated" within the preamble, it did not propose to construe that word.  (D.I. 147 at 4:2-8).  And despite the Court's construction of the "automatically" terms as "done with little to no human control," Plaintiff continues to argue that "the limiting nature of the preambles should preclude any of the recited method steps in claim 1 from being manually initiated or performed."  (D.I. 145 at 2).  Such an interpretation would create internal inconsistency between the preamble and body of claim 1, where four of the five elements include something "automatic" or "automatically" done.[20]

Regarding the phrase "Internet-using entities," at the Markman hearing, the parties stipulated that the term "global computer network" in the body of claims 1 and 11 means the Internet.  (D.I. 147 at 19:25-20:8).  Given this stipulation, the phrase "Internet-using entities" does not give meaning to the phrase "global computer network" and therefore is not limiting.

---

[20]     ('582 Patent at 16:44-67).

Therefore, the Court finds that the preamble of claim 1 is not limiting. The body of the claim recites a structurally complete invention, with the preamble language used merely to "state a purpose or intended use for the invention." *Catalina*, 289 F.3d at 808 (quoting *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)).

The preamble of claim 11 recites "[a] tangible, non-transitory data storage medium comprising indicia of instructions for a processor to perform a method of collecting profiles of Internet-using entities, the method comprising."[21] The parties dispute whether the entire preamble is limiting and if not, which parts are and are not limiting. Defendants argue that the Court should find the entire preamble not limiting or at a minimum, everything after the first "comprising" not limiting. Plaintiff argues that the entire preamble is limiting. (D.I. 147 at 26:18-23). Based on their representations at the Markman hearing and the supplemental briefing, the parties appear to no longer seriously dispute whether the beginning of the preamble of claim 11 is limiting (and effectively agree that it is).

In their briefing and at the hearing, Defendants identified claim 11 as a "Beauregard claim," which is a claim to a computer-readable medium. (D.I. 136 at 6; D.I. 147 at 10:16-23). In this case, that claim 11 is a Beauregard claim seems to only be apparent from the preamble. In addition, claims 12 through 20 reference "[t]he data storage medium of claim 11," but only the preamble of claim 11 provides that the "data storage medium" is "tangible" and "non-transitory." Thus, this part of the preamble gives meaning to the claims and is limiting.

The rest of the preamble includes, "indicia of instructions for a processor to perform a method of collecting profiles of Internet-using entities, the method comprising[.]" Several of the claims that follow claim 11, specifically claims 12, 15, 16, 17, 19, and 20, depend on claim 11.

---

[21]    ('582 Patent at 17:45-48).

They each include that "the indicia of instructions instruct the processor to perform a method that further comprises," followed by additional limitations.   The Court finds that this part of the preamble is also limiting because other claims "rely upon and derive antecedent basis from" it. *See Eaton Corp.*, 323 F.3d at 1339.   However, for the same reason stated above in the discussion of the preamble of claim 1, the phrase "Internet-using entities," is not limiting. Therefore, the Court finds the preamble of claim 11, to the extent it differs from the preamble of claim 1, of the '582 Patent is limiting.


The Honorable Maryellen Noreika
United States District Judge